Case 14-70070 Vincent Forras et al. Appellants v. Imam Faisal Rauf et al. Mr. Klayman for the appellants, Mr. Ho for the appellees. Good morning your honors, may it please the court. This case was brought on behalf of a valiant first responder who's been awarded a medal by former President George W. Bush. He was trapped under the World Trade Tower for hours. He takes 23 medications. He's dying. He's an American hero and myself. The issues in front of this court deal with the dismissal of the lower court case on the basis of the anti-SLAPP. That's the sole basis upon which the lower court judge, Judge Rothstein, dismissed the case. She stated in her order. Didn't you have an alternative ground that it was time barred? Not the way she wrote the order your honor. It does not in fact say she's dismissing it under the statute of limitations, although she does discuss that. She says at the end of her order, accordingly defendant's special motion to dismiss, excuse me, pursuant to the anti-SLAPP act is granted and plaintiff's complaint is dismissed. So she was dismissing it based on this high standard of a likelihood of success on the merits, which this court has already ruled does not apply to this court in diversity cases. That was the Abbas case, which I'm sure you're familiar with because rule 56 and rule 12 has a simple pleading standard which would allow a plaintiff to go to trial. Do we have to deal with some jurisdictional questions first? Yes your honor. Let's start with diversity. We've gotten a flurry of papers late last night and this morning on that. Correct. Your honor, I asked that question so I filed a motion to amend the record. I thought I might speed things along this morning. I could have answered it too. You might have speeded things along better if you'd done it at the district court where the issue was originally raised. Well your honor, we didn't feel we had to do that because the complaint does show diversity here. The caption of the complaint shows that Mr. Forrest has a Connecticut address. The address is not the state of citizenship. It's not the same as citizenship. You're absolutely right your honor. I'm not disputing that. So we did clear it up. You asked the question. You said at all relevant times, but you didn't define all relevant times. Can you tell us what your citizenship and Mr. Forrest's citizenship were at the time the complaint was filed? I've been a citizen of Florida since early in the 1990s. I ran for the U.S. Senate there as a complainant. Mr. Forrest, at the time the complaint was filed with a citizen of which state? Connecticut. And how is that to be reconciled with what you filed in your opposition to the motion to dismiss in district court where you said the Supreme Court of New York found that Forrest does not have a bona fide residence. He was located in New York as well as Connecticut at the time of the complaint. Because he spent time, what we're trying to say is he spent time in that area in the zone of 9-11. He had an office there and he would sleep there and he would stay there. So we're not saying that he's a citizen of New York, but we're saying he did spend time in that area. And of course we sued. We didn't sue on the basis of attacking Islam. That's how this case arose. Again, I want to keep focused here on his citizenship because you seem to be using residence as if you just said that your complaint was using residence as a substitute for citizenship because that's all you listed in the caption. No, what we're saying here is your honor is that we did show that there was diversity. We did plead diversity under section 1331. You did not plead diversity. You've just said you were at all relevant times a domiciliary of Florida and that does not appear in the complaint anywhere. Well, we did plead, what I'm saying is we plead, pled the statute 1331. You didn't. Oh, you mentioned the statute. Yes, we mentioned the statute. But you mentioned foreign. And the caption, let me explain something here if I may. You mentioned foreign diversity. Yeah, we are sensitive about the addresses because of the fact that we were threatened by the defendants in this case to say that in effect you're an enemy of Islam. I can read you what they said and it wasn't just published in New York Post. This was, as alleged, published to the radical Muslim world. I don't think we need a reading of that. I think we know people in all kinds of cases, all kinds of cases. Well, there's ways to deal with that in district court, which you didn't do, right? If you've got a security issue, ask to file it under seal. Your honor, I'm sorry that this issue arose in terms of the security, but it is an issue in terms of this case. And consequently, I used what was my office address here. I knew that we had diversity. I was not a citizen of New York, nor was Mr. Flores. We were citizens of different states. And we did plead that here by claiming 1331 as diversity of citizenship. We could have used greater specificity. I agree. I'm not arguing with you. But we've now cleared that up. You asked the questions. And there is precedent before this court that on appeal, because the questions were asked, that we can amend the record. If we have to go back to the we will. But we did not try to pull the wool over anybody's eyes. There is diversity. Can you also address personal jurisdiction? Personal jurisdiction is not something that the court ruled on. Clearly, it didn't rule on personal jurisdiction. It's not in front of this court. But I will address it. Jurisdiction. Jurisdiction is always in front of this court. I will address it. I am a lawyer who's fairly well known in this city. I have supported the word. I bring cases against terrorists. I brought cases even against Osama bin Laden. And consequently, to issue that kind of statement, which is intended to hurt me in my community, that is projecting yourself. You just said your community is Florida. I have several communities. I'm a lawyer before the District of Columbia Bar. And I'm a lawyer in front of the Florida Bar. That's undisputed. Due process clause requires that Mr. Bailey have contacts with D.C. Well, he did. Not that you and what were his contacts? He projected those statements into D.C. knowing that this was where I practice law and it was to hurt me. And your honor, there is. And, you know, we're not anti. How did he project them? How does your complaint allege that he projected them since he was simply the source? He wasn't the author of the article. It says specifically in paragraphs one through nine that it was projected into the District of Columbia. It says that your honor. I know it says that I can read it. A possible factual allegation as to how a source has control over where something is published, whether or where Mr. Bailey is a highly intelligent man. We never had we never got a chance to go to discovery. We should have had discovery here. OK, it was cut short. Let me be clear here. OK, let me be clear here. This case was dismissed on the grounds of the anti-statute, excuse me, the tongue twister. No other grounds. Discovery is automatically stated once a motion is filed. We never had an opportunity to take discovery into his motivation and what he was trying to do, although it's clear on his face. And we did need it in the complaint. And your honor, if you if you would like, I can go back and read it on rebuttal. I'll find the specific provisions. So how do you I don't need that. How do you distinguish our McFarland decision? McFarland versus Esquire magazine for purposes of personal jurisdiction, because I think that's your biggest hurdle. I know what your papers say. I distinguish it on the facts of this case, which we weren't alleged allowed to develop because this case was cut short under the anti-slap statute. Is that Mr. Bailey knows full well that this is my community and so does the imam. The imam, by the way, who is a member of the Islamic Society of North America, was never sure. So before an unindicted, whether or not all kinds of issues, you know, that you're raising, we're not in front of this judge. You know, if your honor is inclined to dismiss the case, you can find some reason to do it, but it's not in front of this court. And the reality here is that this case should have continued on. We should have been allowed to develop the facts here. It was cut short because it was dismissed on the grounds of only, only the anti-slap statute. And that statute is a violation, this court has ruled, of rules 12 and 56 of the federal rules of civil procedure because they allow cases to go to fact finding and in front of a jury. And consequently, the issue of the statute of limitations did not arise. But if it did, we filed a lawsuit in federal court before the case in DC was dismissed voluntarily. There are no specific cases on point on this. What date did you file that lawsuit? October 12th. Is that right? I had October 12th is the day you filed the lawsuit. Right. We got within the one year, which we didn't need to do. The article was published October 11th. And we're not basing this. No, we filed it. We made it by day. Okay. Go back and look at the dates. Okay. We made it by day, but we didn't base this case solely on the publication. The complaint says clearly that they sent this in effect fatwa out into the Muslim world. You know, just today, turn on the news, the individual who killed Osama bin Laden, a Muslim woman published on the internet, his address and the poor guy, I mean, he's a Navy SEAL. He's scared to death. You can see because there is this real risk and they knew what they were doing. And to say that we are Nazis, to say that we are bigots against Islam, that we brought this case just to harass Muslims, which is not true. I've defended Muslims in cases. That is a timeout to telling the world harm or kill Mr. Forrest and Mr. Klayman. That's the way the world works. That's a reality. That's not fiction. I sat in my office at Judicial Watch and watched the Pentagon go up on 9-11. This imam told the world that the United States deserved what it got for 9-11. This is not some imam that's neutral. This is a guy who's a member of the Islamic Society of North America that was an indicted co-conspirator in a federal court in Texas. So this is very serious, Your Honor. It's not an insult like the lower court judge said. In fact, her saying that insulted me. All right. Thank you. Thank you. We'll hear from the other side. Thank you. Good morning, Your Honors. May it please the Court, Christopher Hogue on behalf of Mr. Bailey. There is no subject matter jurisdiction in this case. It's very clear, not only from the lack of specificity in the submission that was made last evening, but also in an admission that Mr. Bailey made on pages 11 to 12 of his motion to dismiss, I'm sorry, opposition to motion to dismiss, which we attached as Exhibit 1 to the opposition to the motion. But that was an admission about residency, which is not the same as either domicile or citizenship. Well, you know, he admits that there is a lack of diversity, is what he says. At the top of page 12, it says, moreover, on the second line of page 12 of Exhibit 1, moreover, while Forrest was located in New York as well as Connecticut at the time of the initial complaint, this is no longer true, and therefore diversity of jurisdiction is properly invoked. And the citation is to the Caterpillar v. Lewis. That appears to be the concession that there was not diversity of citizenship until some time later after the complaint had been filed. However, Caterpillar does not give the relief that Mr. Klaman would like. Indeed, Caterpillar only applies where there is a diversity-destroying party who is dismissed out of the case. The correctly controlling case is a Supreme Court case called Grupo Dataflux, which I cite at page 3 of the opposition we filed last night. Once there is a failure to have diversity at the institution of the lawsuit, that is a failure that essentially continues and deprives the court of subject matter jurisdiction. Also, Judge Millett, you're absolutely correct. There is no in personam jurisdiction. The McFarland case is exactly on point, and there is no distinction that anybody has been able to draw to that. Mr. Bailey, this is the height of absurdity, very frankly. A lawyer makes a statement in litigation in New York. That statement is picked up by a national journal, a national in a number of jurisdictions, including the District of Columbia. Somehow that is sufficient under international shoe to give this court in personam jurisdiction over Mr. Bailey. Granted, that was not something that the court below relied upon. The court below felt that both the anti-SLAPP provision as well as the statute of limitations issue allowed dismissal and never addressed the question. On the statute of limitations, is my math right or wrong that the article was October 11, 2011, and the lawsuit was October 12, 2012? That's correct, Your Honor. We believe that the statement was made on October the 8th in court, and it was published in the Post on October 11th. Of course, Mr. Bailey had nothing to do with that, and the lawsuit in the D.C. Superior Court under a one-year statute of the 12th. So it was either four days late or one day late, but either way, it was late. And then obviously, after it was voluntarily dismissed without prejudice, by the way, after three failures to file an opposition to a motion to dismiss, or a motion for judgment of the pleadings, rather, in the Superior Court case, that case was dismissed without prejudice and then brought the exact same case here in this court. There's no relation back in that court. The case that was filed in this court did not happen until 2012. So he's out of court on statute of limitations as well. Also out of court on such fundamental principles as New York Times versus Sullivan, litigation, privilege, many, many different... It may not be an issue. Judicial privilege may be about the same in the two jurisdictions, but does the judicial privilege, in a diversity case, does the judicial privilege that applied in the forum where the statement was made in court, i.e. New York, govern? Or because you're litigating in D.C., is it the D.C. judicial privilege? Well, I think it's substantive law. So I think that the law of the place of the alleged tort is the law that would govern, is the way I would analyze it. And so D.C. law is what you say would govern? Yes, that's right. Mr. Hogue, what's your best authority? I see that in the relation back analysis of the district court cases, do you have any stronger authority for the notion that assuming the D.C. case was timely filed, that subsequently filed, same complaint in the federal court would not relate back? I don't believe there are any found that address that point specifically, and I don't think anything has been cited by either side on that. But I think it's a fundamental principle that when a case is dismissed without prejudice by the party who brought it, that there's nothing that would in some way toll the operation of the statute until the later filing in the U.S. district court. So I can't answer the court with any direct case law authority, but it seems to me almost intuitive, if not fundamental, that there would be no such relation back. Although if a case is removed by a defendant from a state court or from the superior court to the federal court, then it would carry over. Well, I would agree with that, but this was certainly not a removal. This was a cynical, very frankly, the precipice that was filed, the dismissal, first of all, was done in violation of the superior court rules, because at that stage in the litigation, it needed to be done with the consent of both parties, and that didn't happen. But second of all, there was a statement, an overt statement by Mr. Klayman in the dismissal that the reason that he was dismissing it in the District of Columbia Superior Court in face of a pretty extensive motion for judgment on the pleadings, including anti-SLAPP statute relief, was that he wanted to take advantage of a trial court decision in the federal court case, the Bolter decision, which was subsequently upheld by ALVAS, essentially. And so I don't think it's analogous to a removal. I think it was a, you know, it was a multiple litigation, you know, cynical decision that this was a way to avoid the obvious trap that he was walking into with the anti-SLAPP act in the District of Columbia. Well, I think without imputing or finding bad faith, we would have to come up with a rule how to treat that kind of situation, where essentially the same case, same parties, you know, same allegations is moved based on a perception that there might be federal court jurisdiction, whether there's a relation back there. Well, what I would suggest is that it's a burden on the plaintiff to show that there is a relation back, and I don't see any demonstration or even contention by Mr. Klayman that there is a relation back. Does it help to relate back if the first action would have been time barred anyhow? Well, that's the point we were just discussing. If it was too late in Superior Court, it doesn't matter if it relates back, and it was too late in Superior Court. I want to say just a word, if I might have a couple of minutes, to talk about attorney's fees. We understand the ALVAS decision. We have issues with the ALVAS decision. We think it conflicts with a number of other circuits, but we understand that we're bound by that law. What we're not bound, however, is by footnote six of the ALVAS decision, which talks about the unavailability of attorney's fees in the event that you can't get anti-slap relief in the federal court because it's a diversity case. That footnote is dicta, I'm sorry, and I misspoke, it's footnote five. There are two cases, Alyesha and Napera, cited at page 54 of our brief, which say that in this type of a situation, indeed, attorney's fees are available, and indeed, even if the court finds that it does not have subject matter jurisdiction over this litigation, attorney's fees are allowed under those two cases, Alyesha and Napera. This is a case that cries out for an award of sanctions. Judge Rothstein certainly thought so. This is the definition of multiple and vexatious litigation. It just cries out for- None of that's before us. I mean, the district court clearly reserved that issue. That's true. That's true. I'm simply saying that, well, I think it is before you as to whether or not the court has the authority to award attorney's fees. Judge Rothstein- The district court hasn't exercised any discretion yet, hasn't made any decision on that. I don't know how we actually have that ripe issue before us. Except to say that, well, the judge did say that we were entitled to attorney's fees, just that there had to be a hearing in terms of the terms- The world has changed a bit from when she wrote that opinion. Right. Well, I understand that. I understand that. And I have nothing further to say. Thank you. Mr. Clayman, we'll give you just two minutes. Yeah, I appreciate it, Your Honor. The statements that were made by Mr. Hoog are not accurate. We alleged in the complaint that the matter was published in the New York Post on October 12th, 2010. For purposes of a motion to dismiss, given there's no discovery, you have to accept what we said in the complaint. It's true. So that was a misrepresentation by Mr. Hoog. And I hope that it'll be corrected. Secondly, with regard to the issues of this case, I mean, you can talk about anything you want, but the reality is the judge dismissed solely on the basis of the anti-SLAPP statute. And we didn't hinge just our allegations on defamation or false light. We also said in the complaint, in paragraph eight, that these statements that I'm an enemy of Islam, in effect, because we hate Muslims and despise the religion, and we're the equivalent of the Third Reich and Nazis, that created intentional affliction of emotional distress. That's the primary claim. And there's a three-year statute of limitations on that. And Your Honor can look at the case Saunders v. Nomadi, 580 A. 2nd, 660 D.C., 1990, which states the case. Is that in your brief? I'm sorry? Is that case in your brief? No, that case is not in our brief. I found it yesterday in researching it. Did you tell the other side that you were going to refer to this case as an oral argument? I found it late last night, Your Honor. Well, you did a lot of filings late last night, so you could have emailed them and let them know about the case. My colleagues found it and Saunders v. Nomadi, 580 A. 2nd, 660 D.C., 1990, similar case cited where victims of Palestinian terrorists, in Israel, by the way, brought a case in federal court here, in D.C. Superior Court here, and they were threatened. I mean, the assault that applied and the intentional affliction of emotional distress were considered separate. So we deserve an opportunity to go back to lower court and make these arguments, because all the court considered, she talked about a melange of issues, but then she said, I'm only deciding the slap. And this court has decided the slap correctly. Thank God you have done that. I commend all of you for knocking out the slap statute, which is also unconstitutional. All right. Thank you, Mr. Klaman. Thank you, Your Honor. The case is now submitted.
judges: Millett, Pillard, Williams